IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville August 21, 2013

**RAY JUNIOR TURNER v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2007-D-3535       Cheryl Blackburn, Judge**

---

**No. M2012-02311-CCA-R3-PC - Filed October 1, 2013**

---

Petitioner, Ray Junior Turner, was convicted of one count of conspiracy to deliver 300 grams or more of cocaine and one count of delivery of 300 grams or more of cocaine. Each of the offenses is a Class A felony. *See* Tenn. Code Ann. § 39-17-417(j). The trial court sentenced petitioner to sixty years for each conviction as a career offender to be served concurrently. He unsuccessfully appealed his convictions and sentences. *See State v. Kenneth Miller and Ray Junior Turner*, No. M2008-02267-CCA-R3-CD, 2010 WL 1644969, at *1 (Tenn. Crim. App. Apr. 22, 2010). Petitioner filed the current petition for post-conviction relief in which he alleged that he received ineffective assistance of counsel at trial. Following an evidentiary hearing, the post-conviction court denied relief. On appeal, petitioner argues that he received ineffective assistance of counsel when trial counsel: (1) failed to properly investigate petitioner's case and communicate with petitioner; (2) failed to file a motion to suppress wiretap evidence; and (3) failed to properly inspect all discoverable evidence introduced at trial. Following our review of the parties' arguments, the record, and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ALAN E. GLENN, J., joined.

George D. Norton, Jr., Selmer, Tennessee, for the appellant, Ray Junior Turner.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and John Zimmerman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts**

**A. Trial**

This court summarized the facts presented at trial in our opinion addressing petitioner's direct appeal:

Agent Shelly Smitherman, with the Tennessee Bureau of Investigation ("TBI"), testified that she was the agent in charge of the investigation involving [co-defendant Miller and petitioner], which began in December 2005. Agent Smitherman obtained a wiretap order allowing her to intercept [co-defendant's and petitioner's] phone calls; she explained that agents in the wireroom listened to the phone calls and that they would relay pertinent information to officers in the field conducting surveillance of [co-defendant and petitioner].

Through intercepting these phone calls, it was determined that a drug deal was to take place on March 24, 2006, at the Rivergate Mall. [Co-defendant] Miller was to deliver a kilogram ("kilo") of cocaine to an unidentified individual coming from Kentucky. Police conducted surveillance of [co-defendant] Miller throughout the day. At 11:34 a.m. on this day, [co-defendant] Miller phoned [petitioner] and asked him to "come and drop it off." TBI Special Agent Steve Talley testified that Kavares Davis ("Davis") arrived at [co-defendant] Miller's apartment at 1:34 p.m. At 1:47 p.m., officers observed [petitioner], along with two other individuals, arrive at [co-defendant] Miller's apartment. [Petitioner] went inside the residence through the garage door. After his arrival, the blinds were closed. A few moments later, the blinds were reopened, and [co-defendant Miller, petitioner,] and Davis exited the apartment and stood out front talking for a time. Around 2:50 p.m., [petitioner] and Davis left the residence.

Around 6:30 p.m., officers observed [co-defendant] Miller leave his apartment in his black Chevrolet Impala, heading toward the Rivergate area. When he arrived at the mall, [co-defendant Miller] went inside the food court area and purchased some cookies. He received a call from Davis and then returned to his vehicle. [Co-defendant Miller] drove to the food court entrance, and a man got inside the vehicle. They drove around to the other side of the mall and parked near a green Pontiac Grand Am with Kentucky

tags. Detective Herbert Kajihara, with the Twentieth Judicial Drug Task Force, saw the man who had been in [co-defendant] Miller's car walk back toward the mall. After [co-defendant] Miller left, [Detective] Kajihara continued to observe the Kentucky vehicle. He then saw the same man exit the mall, along with another male and a female juvenile, and get inside the car. The individuals were carrying packages.

Officers followed the green Pontiac to a gas station. At the gas station, an individual later identified as Ned Wayne Thompson ("Thompson"), got out of the vehicle and placed something that looked like a bag in the trunk. When Thompson left the gas station, the vehicle proceeded onto Interstate 65. Although radar was not used, Officer Michael Wilson of the Metropolitan Police Department paced the vehicle traveling 80 miles per hour in a 70 mile-per-hour zone. Officer Wilson stopped the vehicle. The State did not want to compromise the wiretap investigation, so the officers proceeded under the auspice that they were stopping the individuals for a traffic violation, and they obtained probable cause to search the vehicle due to a K-9 alert. Hidden behind carpeting inside the trunk, officers discovered two separately packaged bricks of cocaine, weighing approximately two kilograms.

Officers then procured search warrants for [co-defendant Miller's and petitioner's] residences. During the search of [co-defendant] Miller's residence, police recovered: one kilo of cocaine from the kitchen; 124.5 grams of cocaine found inside a shoe box in the bathroom; $13,000 in cash from the safe; a notebook with drug ledgers, including names; some nine millimeter rounds for a handgun; and "gunk cans" containing cocaine. Officers also found items used to prepare the cocaine for resale-digital scales, a "kilo press," plastic baggies, and a "cutting agent" used to break down cocaine. [Co-defendant] Miller also used a video camera to monitor the parking lot in front of his apartment. At [petitioner's] residence, Agent Talley was in charge of collecting evidence. Evidence collected included five notebooks containing drug ledgers found in the kitchen garbage can, digital scales, a vacuum bag sealer, two loaded handguns, a "kilo press," and a "cutting agent."

Kavares Davis, initially a co-defendant in this case, testified that he had entered a guilty plea to possession of .5 grams or more of cocaine and received an eight-year sentence under the terms of the agreement. Davis affirmed that [petitioner] was his uncle and that [co-defendant] Miller was his cousin. [Co-defendant] Miller supplied him with cocaine at the time of his March 2006 arrest and had done so "off and on" for two or three years. In November or

December 2005, Davis told [co-defendant] Miller that he did not like dealing with [petitioner] because of his high prices, $20,000 for a kilo of cocaine; however, [co-defendant] Miller continued to deal with [petitioner].

Davis went to [co-defendant] Miller's apartment on the evening of March 23, 2006. [Petitioner] was already there; he had brought three bricks or kilos of cocaine for [co-defendant] Miller, which were sitting on the table. [Co-defendant] Miller said one of the kilos was "bad," and [petitioner] promised to replace it with another one the next day. [Petitioner] took the "bad" kilo with him when he left.

According to Davis, [petitioner] showed up the following morning with two other men. Davis was already there because he and [co-defendant] Miller were supposed to go get something to eat. Davis went downstairs to let [petitioner] in through the garage. [Petitioner] went upstairs, but Davis stayed downstairs. Davis testified that [petitioner] was dropping off the new kilo of cocaine, which he had in his arms. [Co-defendant Miller and petitioner] then came back down to the basement, and all three men exited and stood outside talking for a while.

Later that day, [co-defendant] Miller asked Davis to follow him to Rivergate Mall to meet Thompson, aka "Kentucky." Davis phoned [co-defendant] Miller who was in the food court area of the mall; [co-defendant] Miller stated he was "waiting on them to get done eating." Davis made plans to meet [co-defendant] Miller at a Mapco gas station following the exchange. After they met at the gas station, they proceeded to [petitioner's] residence, where only [co-defendant] Miller went inside. About five minutes later, he came back out to the car and grabbed a bag, which he stuffed in his coat, and went back inside. Later that evening, Davis and [co-defendant] Miller were arrested at a Mexican restaurant in Hermitage.

Previously, on March 10, 2006, Agent Smitherman saw Davis place a trash bag in the dumpster of [co-defendant] Miller's apartment complex. Agent Smitherman pulled the trash and found three empty plastic "kilo wrappers," rubber gloves, a "cutting agent," and a sheet of paper showing a drug ledger. Additionally, on March 10, officers in the wireroom began listening to numerous conversations involving [co-defendant Miller and petitioner], wherein [co-defendant Miller and petitioner] used code words for exchanging drugs and money.

Following the conclusion of the proof, the jury found both [co-defendant and petitioner] guilty of conspiracy to deliver 300 grams or more of cocaine and delivery of 300 grams or more of cocaine. [Co-defendant] Miller was also found guilty of possession of 300 grams or more of cocaine with the intent to deliver.

A sentencing hearing was held on July 16, 2008. The trial court sentenced [petitioner] to two concurrent terms of sixty years as career offender. As for [co-defendant] Miller, the trial court enhanced his sentence on each conviction to forty years as a Range II, multiple offender. The trial court then ordered all three of these sentences to be served consecutively to one another, for a total effective sentence of one hundred and twenty years.

*Kenneth Miller and Ray Junior Turner*, 2010 WL 1644969, at *1-4.


B. Post-Conviction Hearing


Petitioner filed his petition for post-conviction relief on June 9, 2011. The post-conviction court held an evidentiary hearing on July 25, 2012.

Trial counsel testified that he was retained to represent petitioner in Davidson County Criminal Court after petitioner's arraignment and general sessions court dates. Trial counsel further testified that, four to six weeks after being retained as counsel, he attended a co-defendant's hearing regarding a motion to suppress wiretap evidence. Trial counsel did not join the motion because co-defendant's counsel had filed it and the State had responded to it before he was hired. However, he attended the hearing to ascertain the outcome.

Even though the wiretap evidence was a large part of the State's evidence against petitioner, trial counsel testified that he decided a similar motion to suppress for petitioner would be unsuccessful. Trial counsel testified that he determined petitioner did not have standing to challenge the wiretap issue. Trial counsel also decided that even if petitioner had standing, he would be unsuccessful on a motion to suppress the wiretap evidence because the evidence in petitioner's favor was insufficient to support the motion and because the co-defendant's motion was denied after the trial court heard the same testimony that trial counsel would have used to support petitioner's motion. Trial counsel determined that the court would have found that the wiretap evidence was relevant and that Judge Monte Watkins, who issued the wiretap order, was a neutral and detached magistrate, even though Judge Watkins had previously represented petitioner's co-defendant in a prior unrelated case.

-5-

At the time of the decision, trial counsel evaluated the discovery he had received, the application for the wiretap, the wiretap tapes, and the applicable case law and procedures. Trial counsel also spoke with a police officer about the officer's surveillance of petitioner prior to obtaining the wiretap order. The police officer told trial counsel that the surveillance was only partially successful, and trial counsel recognized that at times during the police investigation there were other successful investigative methods that were used. Although trial counsel could not remember clearly, he was sure that he considered whether the State had properly met its burden required to obtain a wiretap order.

Trial counsel testified that he did not raise the wiretap issue in the trial court but raised it on appeal, even though he did not think the appeal would be successful. He believed that the issue was properly raised because the co-defendant had raised the issue at trial, and the two cases were appealed simultaneously. Trial counsel admitted that this court determined there was an insufficient record from the trial court to decide the wiretap issue in petitioner's case. Trial counsel also stated that had the wiretap evidence been suppressed, there might have been a different outcome at trial.

Trial counsel further testified that he considered filing a motion to sever petitioner's case from his co-defendant's case. Despite the fact that trial counsel thought the trial would have gone better if the trials were severed, trial counsel testified that he did not file a motion to sever because he did not think there was a sufficient legal basis for severance based on case law. In addition, trial counsel testified that he discussed his trial strategy with petitioner. He told petitioner that his being present when other people engaged in a drug transaction was insufficient to prove that petitioner was involved in the drug transaction or to prove a conspiracy.

Trial counsel testified that he properly engaged in discovery and investigation of petitioner's case. Although trial counsel was unable to recall whether he interviewed Judge Watkins, the judge who issued the wiretap, he interviewed all of the government's witnesses either prior to trial or, in the case of corroborating witnesses, on the day of trial. Trial counsel examined the tangible evidence in the case, including the set of scales. Even though he did not remove the scales from their box, he opened the box and looked at the scales. Petitioner's wife explained the scales' origins, purposes, and uses to trial counsel. Trial counsel testified that he did not object to the scales based on chain of custody because there was an insufficient legal basis for an objection. Trial counsel also testified that after a substance fell out of the scales during trial, he did not object to the substance being field-tested in front of the jury but argued that the scales could not be properly attributed to petitioner because they were found at the residence of petitioner's wife, not petitioner's residence.

On cross-examination, trial counsel testified that he had been practicing law and specializing in criminal defense since 1998. He had been involved in twenty-five to thirty felony jury trials in both state and federal courts prior to representing petitioner. Trial counsel did not know petitioner before he was retained in this case.

Trial counsel testified that petitioner's wife told him that the scales in this case were purchased for her son to use in a school project. Petitioner's wife also told trial counsel that petitioner did not reside at the wife's residence but only stayed there on occasion. Trial counsel discussed these statements with petitioner.

Trial counsel further testified that he had the necessary information when deciding whether to file a motion to suppress the wiretap. Trial counsel testified that he and the co-defendant's trial counsel determined that the only legal ground for a motion to suppress the wiretap was that it was not issued by a neutral and detached magistrate because Judge Watkins had represented the co-defendant in a previous case. This was the only ground that the co-defendant alleged in his motion to suppress the wiretap. Trial counsel testified that petitioner denied that his recorded conversations with co-defendant referred to drugs. Trial counsel also testified he had the police reports of the officers prior to trial and was familiar with the investigation and the evidence to be provided by the officers. He admitted that he did not expect illicit substances to be found in the scales.

Petitioner testified that he met with trial counsel three times prior to trial. At the first meeting, petitioner retained trial counsel and discussed how to investigate the case. At another meeting, they discussed the evidence, or lack thereof, the State had against petitioner. Petitioner testified that trial counsel told him that the police did not have a valid wiretap and that counsel never played the wiretap tapes for the petitioner. Petitioner also testified that trial counsel did not review the discovery in the case with the petitioner or prepare him for trial or appeal. Although petitioner admitted that trial counsel explained the issue of severance, he stated that he still thought the trials had been severed. Petitioner acknowledged receiving a letter from trial counsel explaining that he could not suppress the wiretap evidence. Petitioner also admitted that trial counsel discussed petitioner's right to testify at trial, the potential juror list, and the identity of the State's witnesses prior to trial.

Following the hearing, the post-conviction court denied the petition by written order. With respect to trial counsel's investigation of the case and communication with petitioner, the post-conviction court credited trial counsel's testimony and found that petitioner had conceded that counsel had discussed the case with petitioner on three separate occasions. The post-conviction court took judicial notice that there were multiple hearings and discussion dates throughout the case where counsel met with the petitioner in the courthouse. In addition, counsel was unsurprised by evidence aside from the substance inside the scales'

box, of which neither the State nor the defense was aware until trial. Regarding the motion to suppress the wiretap evidence, the post-conviction court concluded that trial counsel attended the co-defendant's motion to suppress and considered petitioner's evidence before deciding the law did not support a motion to suppress for petitioner. The post-conviction court determined that petitioner failed to show that trial counsel was ineffective.

## II. Analysis

Petitioner argues that his trial counsel provided ineffective assistance by: (1) failing to properly investigate petitioner's case and communicate with petitioner; (2) failing to file a motion to suppress wiretap evidence; and (3) failing to properly inspect all discoverable evidence, specifically the set of scales, introduced at trial. The State responds that the post-conviction court properly denied the petition for post-conviction relief. We agree with the State.

### A. Standard of Review

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2012). A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2012). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the trial court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the trial judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App.1997)). However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. Crim. App. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citation omitted). It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). As our supreme court held:

> "[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations."

*Id.* at 315-16 (quoting *Baxter*, 523 S.W.2d at 934-35). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

To prove that petitioner suffered prejudice as a result of counsel's deficient performance, he "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

B. Petitioner's Claims

### 1. Failure to Properly Investigate Petitioner's Case and Communicate with Petitioner

The post-conviction court concluded that trial counsel adequately prepared for trial and communicated with petitioner. This determination is supported by the record. The record reflects that trial counsel met with petitioner on three separate occasions, and the post-conviction court took judicial notice that there were multiple hearings and discussion dates where petitioner and trial counsel met prior to trial. Petitioner testified that trial counsel discussed with him the jury selection process, the State's testifying witnesses, and petitioner's Fifth Amendment right to testify. He also stated that trial counsel sent him a letter explaining why he was not filing a motion to suppress the wiretap evidence.

The post-conviction court specifically credited trial counsel's testimony that he discussed his trial strategy regarding the motion to sever with petitioner. This factual finding was based on a credibility determination and will not be disturbed by this court. *Dellinger*, 279 S.W.3d at 292. Trial counsel also spoke with each of the testifying witnesses prior to or on the day of trial and had the police reports of all testifying and non-testifying police officers. Moreover, trial counsel examined the tangible evidence at issue in the case. To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn*, 202 S.W.3d at 116). Petitioner has failed to show deficient performance. Trial counsel's preparation for trial and communication with petitioner were not ineffective.

### 2. Failure to File a Motion to Suppress Wiretap Evidence

Petitioner contends that trial counsel's failure to file a motion to suppress the wiretap evidence constituted deficient performance because there were investigative procedures other than a wiretap available to law enforcement officers. The applicable statute states that a judge may authorize a wiretap if the judge determines, in part, that "[n]ormal investigative procedures have been tried and failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." Tenn. Code Ann. § 40-6-304(c)(3) (2012). Trial counsel recognized that periodically during the investigation, the police had successfully used investigative procedures other than the wiretap. However, because there were also periods during the investigation where other investigative procedures had been unsuccessful, trial counsel decided that petitioner's motion to suppress the wiretap evidence would be unsuccessful. Trial counsel testified that he and the co-defendant's trial counsel both determined that the only legal ground for a motion to suppress the wiretap was that it was not

issued by a neutral and detached magistrate. Petitioner's co-defendant filed a motion to suppress the wiretap evidence claiming that Judge Watkins was not a neutral and detached magistrate because he had represented the co-defendant in a previous case. Trial counsel attended the co-defendant's hearing on the motion to suppress the wiretap evidence to assess the likelihood of petitioner's success on a motion to suppress the wiretap evidence on the same legal grounds. The co-defendant's motion to suppress was denied.

Trial counsel testified that he considered the discovery he had received, the application for the wiretap, the wiretap tapes, the co-defendant's denied motion to suppress the applicable case law, and procedural rules when making the decision not to file a motion to suppress. On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell*, 185 S.W.3d at 326 (citing *Strickland*, 466 U.S. at 689). We conclude that petitioner has failed to prove that trial counsel's performance was deficient in light of the circumstances and trial counsel's specific considerations.

Furthermore, even if trial counsel's performance could be considered deficient, petitioner has not shown prejudice. In order to prove that he was prejudiced by any deficient performance, petitioner needed to demonstrate that the motion to suppress would have been successful. It would be pure speculation for this court to make that determination based on the scant record and limited testimony provided with regard to this issue. Therefore, petitioner's argument is without merit.

3. Failure to Properly Inspect All Discoverable Evidence Introduced at Trial

Petitioner argues that trial counsel's failure to properly inspect the scales introduced at trial constituted deficient performance. Specifically, trial counsel did not remove the scales from their box to ascertain if another substance or material was in the box. Trial counsel, however, inspected the scales by opening the box and looking inside. Trial counsel also spoke to petitioner's wife about the scales' purposes and uses. The Tennessee Supreme Court has held that "[d]efense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations." *Finch*, 226 S.W.3d at 315-16 (quoting *Baxter*, 523 S.W.2d at 934-35). We conclude that under this standard, it was reasonable for trial counsel to examine the scales without removing them from their box. As the post-conviction court and this court on direct appeal have acknowledged, the discovery of the substance in the scales' box was an unforeseen event for both the State and petitioner that occurred when an officer jostled the container. Trial counsel's performance was, therefore, not deficient.

**CONCLUSION**

Based on the parties' arguments, the record, and the applicable law, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE